115707 Roger Wheeler v. Thomas Simpson Arguments not to accede. 30 minutes per side. Mr. Flood, for appellant. It's my understanding, Mr. Flood, you reserve 6 minutes for rebuttal, is that correct? That's right, Your Honor. Alright, you may proceed. Good afternoon. Along with David Barron, we represent Roger Wheeler in this appeal from the denial of his petition for habeas corpus in the district court. With the time allotted today, we'd like to argue two issues. The first issue, which is the exclusion of juror 638 on the grounds that that juror was qualified and was not substantially impaired. And second, claim two, which was the admission of inflammatory prejudicial information about the second victim, Niobe Warfield, being pregnant at the time of the crime. The exclusion of juror 638 violated Mr. Wheeler's 6th, 8th, and 14th Amendment rights because this juror was manifestly qualified. And his questions during voir dire indicated that his views about the death penalty, which he acknowledged that there were arguments on both sides, neither prevented him nor substantially impaired his ability to consider the death penalty in this case. Jury selection in this case was on an individual sequestered basis. So juror 638 was questioned individually apart from the other jurors. And the trial court in this case proceeded along the following lines. She would provide each individual juror with a brief overview of the capital trial process, specifically focusing on the fact that it was a potential death penalty case and outlining the sort of basic legal principles that the jurors would have to apply. She then went in with each juror, and juror 638 was no exception, and asked him some preliminary qualifying questions related to the death penalty and attitudes about race. In this case, the victims and the defendant were both African American. During his responses or during the entire voir dire, juror 638 evinced a thoughtfulness that was consistent throughout his answers. He was a conscientious person and demonstrated repeatedly in the way he answered his questions that he would take the job of being a juror very seriously. Initially, the judge asked him if he could consider the full range of punishment, and this question was asked in two different ways by the court, and juror 638 unequivocally answered yes, he could consider both of them. In the second question, the judge specifically referenced the death penalty, and he said he could consider the death penalty. She asked him other questions related to his views about the death penalty, and he stated that he had formed no opinion about the death penalty, but recognized that there were arguments on both sides of the issue. He was asked about his moral, religious, personal, and spiritual beliefs and whether that would interfere with his ability to consider the death penalty, and again, unequivocally he said no, and said that there was nothing that would stop him from considering the death penalty. He was asked about his church's views on the death penalty, which he candidly said he wasn't aware if his church had a position, but that it has been a point of a topic of conversation. The judge then proceeded to ask him questions about potential racial bias, and I bring this out because I think it illustrates very, very capably just how thoughtful this juror was. The judge asked him if he had any negative opinions about people of a different race, and he says he tries very hard not to. I think this is important because it shows that this juror is a discerning person and is evaluating each question as it stands and doing sort of an introspective review of his own attitudes. The judge asked if he has particular prejudice against people of other races, and he said, I try to be aware of them and that these things I'm mindful of and I try to overcome. He acknowledged that there was a potential that he probably had some racial bias, but at the end of this area of questioning, he said he would make sure that whatever racial prejudice he had, it would not affect his deliberations or his jury service. What we have here is a man convincing during the questioning with the judge that he is taking each question one at a time, examining his conscience, and answering in the best way possible, the most accurate way. We agree that the juror was wrongfully excused for cause. Do you automatically win or do you have to show something else? I don't think that – I think we believe that this court reviews this issue de novo because the state court did not review the federal claim, and because of that, and this is an issue of law, whether this court applied. Isn't it presumed that the state court reviewed the federal claims when the federal claims were raised in state court? Absolutely, Judge Griffin. And so do you have conclusive evidence that you did not review the federal claim? I'm not sure that conclusive evidence is the standard under – What's the best evidence you've got that they didn't review it? I mean, when the presumption is that when federal claims are raised in state court that the state court considered them, what evidence do you have that they did not to rebut the presumption? I think there's compelling evidence to rebut the presumption that the federal claim was issued or was addressed. I recognize – It was not addressed. The federal claim was not addressed. First, you look at what the state court said. So the last court to rule on this, the Kentucky Supreme Court, in ruling on it did not cite any federal law or the controlling federal standard. That's not dispositive anymore. I mean, we've got cases all over the place that say that even when they don't do that, we presume that they have looked at the federal claims. That's correct. And I think that Richter and Johnson, although Justice Scalia sort of criticizes the majority in Johnson v. Williams, he clearly recognized what the majority is doing is creating legal arguments that overcome the presumption. The majority recognizes, and I think that Richter says this too, that this is a rare thing, but there are facts that are evident in the Kentucky Supreme Court's decision and in the way they have treated this issue in the past that I believe overcomes the presumption. So the first thing is, and this again comes from Johnson v. Williams, is that they did not cite wit or any controlling federal precedent. Second, they did not cite the correct legal standard or the controlling federal standard in evaluating these kind of clause excusals. They did not rely on state court precedent that construed wit or some other appropriate standard, but instead relied on Mabe v. Commonwealth, Montgomery v. Commonwealth, and Thompson v. Commonwealth, all of which are state court decisions applying a different state standard than wit. And that's important. That's one of the things that came up in Johnson v. Williams, is whether or not the state is relying upon a state standard that's different than the federal standard. Did you specifically address Juror 638? Excuse me? Did the Supreme Court of Kentucky specifically address Juror 638? No. There's only a single sentence in the Kentucky Supreme Court decision that seems to apply, and what it said was the trial court appropriately excused or removed for cause those jurors that could not consider the death penalty. Arguably, it was reframing the issue that the trial court had said, but the gist of this was it's incorrect. Juror 638 never said that. In fact, he said quite the opposite. How many jurors were excluded like 638? Were there others as well who were excluded? Yes, there were. How many? Do you know? I think there were eight jurors who were excluded solely on this basis. There were a number of jurors who expressed reservations about the death penalty but had other impediments as well. Juror 638, however, is different from those jurors because he never provided any equivocation or any attitude that would have showed a substantial impairment or that he would be prevented. 638, this is a jury we're talking about, never equivocated? I don't believe he ever equivocated. All right. I mean, you've read the record, I assume. I have, and I'll just take— To me, there's a lot of equivocation in there, and the argument may be that after the equivocation, then he finally comes to the point that, yes, I can fairly administer the law, but throughout, I mean, I can cite you a lot of things he said. If you want. I don't want to argue with the court, but my take is that this is a juror who is— and the videotape is before the court, and if you haven't reviewed that, I'm sure you'll see that he was very consistent, that he was taking this job seriously and he was answering the questions in the most accurate way he could. Going back, what did you have to show? Forget about the EDPA standard or not. Let's assume it's de novo. What do you have to show to get relief? Clear and convincing evidence that the standard was applied incorrectly or the facts were wrong, and she's clearly got the facts wrong. You don't have to show that the jury was actually biased? No. Under Adams and Davis, the excusal of a single qualified juror improperly is grounds for a new penalty phase, and that's what this claim— we're not asking for the court to reverse the conviction here. We understand that the governing law only allows for sentencing phase relief, and on this claim, a single excusal of a qualified juror is reversible error. I apologize, Judge White, if I didn't understand your question earlier. We have post-EDPA cases that hold differently, that you have to establish that the ultimate jury that you got after the excused jury was excused was still biased. The cases that I saw you relied on were pre-EPTA cases. I'm not even sure it was habeas cases. I think they were direct appeal cases. But since EPTA in 1998, I think, I think the standard's different. Also, we have the Witt case now, and I don't see you citing any cases, recent cases, for that proposition that you don't look at the alleged bias of the ultimate jury that was impaled. My understanding is that EDPA did not change Adams for Witt. What's the most recent case you've got for that proposition? Because there are cases that—the most recent one I've seen go the other way. I don't believe that the warden has cited those cases. We do not have a chance to distinguish them, and I'm unaware of that law. My understanding is, even in EDPA context, if you get to that point, if the court determines that this juror was improperly excluded and that exclusion is either reviewed— What's the best, most recent case you got? Adams and Davis. And Gray v. Mississippi. Well, Gray v. Mississippi is an old case. That's pre-EPTA. I know that. But the other two, what years? Davis is, I believe, 1976. And Adams v. Texas is 1980. Okay, they're all pre-EPTA. So you don't have any pre-EPTA cases. And it's our position EDPA did not change that. I know. Do you have any authority that says that? No. So you're saying that all the cases that deal with juror bias and that penalty is that deal with jury bias that say that you have to— I'm sorry. Let me rephrase this. That all the cases that deal with excusing a qualified juror that say that you need to find actual bias are cases dealing with guilt and not penalty. The cases that I think Your Honor is referring to are instances where jurors are found to be tainted or biased for some other reason, either implied bias or expressed bias. And I think that those cases, there is a higher standard. But I think for excusal under wit, if the court determines that it was an improper excusal or the cause was granted improperly, that is the basis for a new sentencing hearing. I'm not familiar with this case law, and I don't think it exists. Well, there is some case law from the Sixth Circuit that is not— the discussion is not extensive, but it says that at least in some juror excusal cases, you have to show that the resulting jury was biased. And there is, however, authority from the Supreme Court in a number of cases that says that those who firmly— this is language from Lockhart v. McCree, Justice Rehnquist. Those who firmly believe that the death penalty is unjust may nevertheless serve as jurors in capital cases so long as they state clearly that they're willing to temporarily set aside their own beliefs in deference to the rule of law. Now, effectively that says, I guess, that a jury made up of people who have— the people who have been excused, let me put it that way, because they said they had doubts about or they were negative about the death penalty, or as they say here, they think the death penalty is unjust, create a biased jury when they cannot serve after they have said that they can set that aside and consider the death penalty. Necessarily, I guess, that a jury that has been improperly put together because all the people who are— have been excused improperly is going to be a jury that is more inclined to go along with the death penalty than one that would have those people on there. So maybe that's the kind of bias that we're talking about here. Well, it is a type of bias. I think Lockhart v. McCree was a broader challenge than we've made with respect to Juror 638. Lockhart, I believe, challenged the institution of death qualification and said that it results in a jury that is biased. It was a systematic exclusion, which is different than we have here. That's correct. All right. One of the cases that I was thinking of is— you might want to write this down— Wilson v. Mitchell. It's 489 F. 3rd 491 at 514 Sixth Circuit Decision, 2007. And I quote, Without a showing that his jury was biased, merely arguing that the trial court erred in dismissing a prospective juror for cause is insufficient to warrant habeas relief. But that's—you're making the distinction between guilt and penalty. That's right. Death qualification and other bias. Okay, you would agree that that's a standard as to— Or other types of bias. I don't believe that that is— Okay. Do you think Witt makes the standard more defendant-friendly than it was before? I believe that Witt affirmed Adams and Davis. And certainly Gray expressly adopted them and said it's conclusive that the exclusion of a single juror. I am unfamiliar with post-AEDPA cases dealing with the excusal of this type of juror under the analysis of bias. I agree with that standard for other types of bias, implied bias or pervasive bias, but not about a juror's views on the death penalty. Maybe we won't resolve this right now, but let's get back into the argument. And, you know, you argue that we did not give the Kentucky Supreme Court any deference because, in your view, they didn't rule on the federal issue or the— but assuming they did rule on it, can you tell me why the Kentucky Supreme Court's decision was an unreasonable application of clearly established federal law as established by the holdings of the Supreme Court? Yes, Your Honor. There are several reasons. The first being that the judge completely misunderstood, and I assume it was an honest— This was a trial judge. A trial judge. We're reviewing the decision of the Kentucky Supreme Court, are we not, rather than the Kentucky trial judge? It's unclear to me which is the dispositive issue, and I would like to address them both. No, no. We review the final state court decision. Do we not? I mean, there's no question about that, is there? Well, there might be a question of whether that's a summary affirmance or not, and if it's a summary affirmance, I'm prepared to argue about why the trial court's conclusion was unreasonable, but there's compelling arguments why the state Supreme Court's argument is unreasonable. The first is that in citing what the trial court did, it completely misconstrues what was said and what the court found. The trial court in this case, after reviewing the videotape, came out and completely miscast—honestly, I think, but miscast the question that was asked and the answer that was given. Instead of this complicated theoretical question, which was preceded— and I think this is important. When the prosecutor asked the juror the question, immediately preceding the issue that the judge thought was equivocal, he said, I'm asking you to commit and tell us what penalty you are going to give here. The juror said, I understand. And then he said, oh, I think it's just whether—and if I understand correct, maybe you're telling me that at this point you're not absolutely certain, which is not a WIT standard, whether you could realistically consider it or not, because—and then the juror answers. That's the most accurate way. It's not clear to me from the record that this juror even understands he's being asked to consider it. At this point, he's already said twice, I can consider it. As if there's a problem with the form of the question. I mean, there has to be an objection as to the form of the question. This is the judge answering— This is the prosecutor, and based on that Q&A, the judge stated— She mischaracterized the answer. She didn't have or not. Not at that point. I think she accurately characterized the record, because when the cause challenge came, she said, I determined this guy was qualified. He said he could consider both. I don't even think that there's a problem. And then the prosecutor, eliminating the absolute certainty, says, no, he said he couldn't consider the death penalty. And the judge says, I didn't hear that. And he says, it's there. And it's not there. This was a theoretical question that asked this juror to eliminate any and all possibility that he couldn't vote for the death penalty, I submit, but certainly to the consideration. And being a thoughtful person, I think this juror was— He is understanding this very abstract question, but he comes back and reaffirms consistently that he can consider both. The application of the law is unreasonable in this case, because this juror was not— His views about the death penalty did not prevent him from considering that as a punishment. He said that he could, and there's no evidence that he was substantially impaired. The judge just misunderstood and miscast his question, and I'm convinced if she had understood it correctly, she would have found him qualified. She just made a mistake. And Witt would not allow that. Even if the judge gets it wrong, that juror is not qualified. Well, counsel, it seems to me that the hurdle you've got to get over here is not so much what you're talking about as it is this problem of showing that the jury is biased after all this is said and done. And I am confused about that, I'll tell you myself, in reading these cases, because in, say, several of them, Gray v. Mississippi, the court said it was granting certiorari to consider whether the improper excusal of a juror for cause can be harmless. And then the court says it can't be harmless. It's got to be harmful in Gray v. Mississippi. So I don't see, I don't understand the biased language in some of the Sixth Circuit opinions, how that can be, what that means. I don't know what they're talking about exactly. And I don't see how it can be consistent with the language of this Lockhart case or this case that says what it says about it cannot be harmless error. Well, the issue of harmless error has come back to the Supreme Court repeatedly since Adams, and Your Honor is correct that they have rejected harmless error analysis as applied to the Witt excludables. Witt and prior to that Witherspoon were not recognized as an amplified right of the prosecution to eliminate jurors, but actually a limitation on that right, and the recognition, and this comes from Witherspoon and then later in Morgan when it was about excluding jurors whose attitudes about the death penalty prevented them from considering life without parole. But what the court said was that when you allow the exclusion of jurors who have scruples against the death penalty but could still consider it and discharge their duties, the panel that results from that is a biased panel because a large segment of the population. Automatically. Automatically. That's right. I will take a look at Wilson v. Mitchell, but it's my understanding that that central core of Witt and the prior case from the U.S. Supreme Court is still extant and controls the outcome of this case. My time is virtually out. I'll reserve the rest for rebuttal. Thank you. Well, I'd like you to also talk about that pregnancy issue if you want. I mean, you've got a little bit of time. In this case, the issue of pregnancy came up in a pretrial motion. Once it was determined that the victim was pregnant, and there's no evidence in the record. I see my time is that. Still have your rebuttal. Thank you. We can allow you more time. I'm always nervous about that. I'll just tell you my concern here. I mean, I'm concerned what the federal issue is. I think as a trial judge, I probably would have excluded any reference to the victim's pregnancy because I agree with you, it really isn't relevant to any issue in the case. The fact that it's a condition of her, well, she may be colorblind, too, and she may be five-foot water. I mean, there's a lot of conditions of people that don't have any relevancy and don't really come in. And it does have the potential for prejudice. But it appears to be a state evidentiary issue to me, and it only arises to a federal constitutional issue if your client was denied his federal right of a fair trial. And here, there was only passing references to the victim's pregnancy. The evidence came in through the medical examiner's brief testimony where he's describing the victim and includes the fact that he discovered the fetus. And then the only other reference is in the prosecutor's closing argument where he talks about the victim as basically a regular person. She lived a regular life and did this and did this, and she was pregnant. And it was in the context of she's a regular, normal person and, you know, that. And it's hard for me, even if there's error, to see how this arises to the level of a denial of a federal constitutional right to a fair trial when the only references to the trial of it are very brief and, you know, very minimal, I think. So, I mean, how do you respond to that? The first response, which goes to the standard where you started, Your Honor, is that through a series of cases, the U.S. Supreme Court, starting in Chambers, I think, has recognized that there are certain evidentiary or procedural issues which, even if permitted under state court, can still run afoul of the federal constitution. And I think the standard, you know, it's cast in a few different ways in Chambers, in Green, and more recently in Dawson v. Delaware, is whether the admission of a particular evidence or type of evidence or the exclusion of that evidence violates basic notions of fundamental fairness. And here, the violation is twofold. First, the violation occurs because it has absolutely no relevance to any issue at trial. In Dawson, there was a fairly pitched dispute about whether or not that defendant's membership in the Aryan Brotherhood was relevant in some way to issues at sentencing. And because of the nature of the evidence that came in, the majority said no, it's not relevant. And the jury learning that he's affiliated, very, very, again, Dawson v. Delaware is a good case for us because there's very limited information about his membership in the Aryan Brotherhood. But because the Supreme Court said there were no issues about this, the victim in that case was another white person, so it wasn't about racial hostility, and the prosecution did not connect that to any other material issue, the mere fact that this guy was a member of an organization that people don't like was sufficient to reverse his death sentence in that case, and they did reverse that. And I think we have a similarly limited amount of information that came in at the guilt phase, through the pathologist, and then it was reintroduced at the penalty phase, and then at a sort of emotional peak in his summation, he mentioned that she was pregnant. You think the error goes to both? Are you arguing only that it goes to the guilt phase? Excuse me, that it goes to the penalty phase? It was introduced in both. I'm prepared to write about that. You get a new trial on both phases. I would like a trial on both phases, but I could see where the court could find that the prejudice at the guilt phase was not sufficient to reverse his conviction, but sufficient because the prosecutor did not reference it in his guilt phase summation. I will credit that. And you think that the jury may have given the death penalty because of this fact?  And at least one of the notes, it seemed like they were distinguishing between the two victims, asking about what would happen if we gave death for one but imposed life for the other. And one inference from that that I think the court could draw is that there was something that distinguished these two victims, and she was pregnant. So that is a distinction, as a defense lawyer, I see as a problem. But we believe that the mention of pregnancy because of the unique nature of an unborn fetus and the vulnerability of the mother is inherently prejudicial. In White v. Thaler, it's the only circuit court decision that I can find on this. They reversed on a very, very similar issue. It's an AEDPA case, but it came under the rubric of ineffective assistance of counsel. In that case, the prosecution introduced evidence almost identical about a small embryo. There was no evidence in White v. Thaler that the victim was aware she was pregnant or the defendant knew she was pregnant, and they reversed a murder conviction because of very limited evidence about that. Now, in that case, defense counsel, unlike here, did not move pretrial to exclude it and did not object when it came in but attempted to sort of put this off on the victim a little bit, and that exacerbated the harm. But the prejudice there under an AEDPA, ineffective assistance of counsel case, I think is at least equal, if not higher, than the prejudice we have to establish. Well, I mean, in that case, the prosecutor really emphasized the fact and really used it prejudicially and improperly, did he not? I mean, I remember reading the opinion that there's a lot of language there that the unfair prejudicial evidence came in and then the prosecutor ran with it. I don't think that's accurate. He said slightly more than the prosecutor said here, but the real harm, I think, was the defense counsel attempting to take that evidence and lessen it but actually amplified it here. So did the jury have two verdict forms? Yes. And did they? They ultimately imposed death for both. Okay. Do you want to say anything about the argument relative to the jury instruction? On this issue or the other issues? The other issues.  Yes. Mills v. Maryland stands for the proposition that anything that systematically precludes the jury from considering mitigation, including unanimity instructions, violates the defendant's Eighth Amendment rights to reliable sentencing because it precludes jurors from considering mitigation. In Mills, the jury was instructed specifically, you have to be unanimous in order to consider mitigation, and the U.S. Supreme Court, even without a showing of prejudice, reversed. Here, this jury was instructed at least 38 times that we can count about their responsibility as it pertains to guilt and then at the penalty phase collectively as you. They were never told there's not an instruction that was given to them that jurors make an individual determination about mitigation, that their decision is not contingent upon the 11 jurors agreeing. We think that that runs directly contrary to Mills v. Maryland because unless the jurors understand that they can consider mitigation, even if any other people don't agree, and give it weight in the life-death determination under the Kentucky procedure, that violates Mills. Here, the judge emphasized repeatedly that you have to do this, you have to do this, you have to reach a verdict, and we've identified about 19 of those, I think, in our brief, but never told the jury that weighing or determining mitigation was an individual choice that they have. And the truth is, under Mills, a single juror who finds a particular mitigating circumstance, they can give that mitigator the weight of life, and this jury was never told that, and for those reasons, we believe that violates Mills v. Maryland. Thank you, Mr. Flood. Any further questions, Judge White? Judge Merrick? Thank you. You'll still have your six minutes for rebuttal. Thank you, Judge Griffin. Good afternoon, Your Honor. May it please the Court. Mr. Flood, Mr. Barron, my name is David Barr. I'm here on behalf of the appellee, Thomas Simpson, Warden, Kentucky State Penitentiary. Firstly, I would like to start off with the standard of review because the landscape has shifted dramatically this year with the Supreme Court's decision in Woodall. I was on Woodall. It got reversed, so I know what you're talking about. Your Honor, I apologize for bringing up a sore subject. That's all right. But I don't know how far the Supreme Court goes on the habeas cases now. I said if they're ever going to let us grant one, this is probably going to be it, but it wasn't. Your Honor, what Woodall says, and it's relevant to the issues here, particularly with the Mills issue, with the Wainwright issue, is that so long as fair minds can disagree as to the state court's application of Supreme Court precedent, they have to be affirmed. It's just that simple. They can only be reversed if their application of that precedent is so objectively unreasonable that it's beyond the possibility of fair-minded disagreement. So that if this court disagrees with their application, that's still not a basis for reversal. It would have to be that nobody could agree with their application. But if they violate a rule, excuse me, Your Honor, if the state court violates a rule that the Supreme Court has stated in a case, and that's clear, then that overcomes the problem, doesn't it? Your Honor, I think that would fall under the contrary, where the Kentucky Supreme Court held something opposite of what those cases said. Woodall dealt with unreasonable application rather than contrary to that. There is a rule from the Supreme Court in several cases. Certainly one is Lockhart, which says clearly, those who firmly believe that the death penalty is unjust may nevertheless serve as jurors in capital cases so long as they state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law. Now here, this juror clearly stated that he could consider all of the options. In addition to that, we've got Gravey, Mississippi. This Lockhart case was in 86. This one was a couple of years later. And they say in Gravey, Mississippi, that they are considering in that case whether the improper excusal of a jury, juror for cause can be harmless. And they hold that it cannot be harmless. So we've got a pretty clear rule coming out of the Supreme Court about this question. Yes, Your Honor, I agree with you on that. But the precedent... How can we have a legitimate difference of opinion when the rule is clear and the court, the Kentucky court, does not really get into the question? Well, Your Honor, there's a condition precedent in that opinion. First, that there's a finding of bias. If there's not... I'm sorry, I misstated. What are you saying? There's still a condition precedent in the case you're talking about. Which case now? The Lockhart case. Okay. There still has to be a finding made that this person could set that aside, that the trial court has to make a determination, a factual determination that this person is not biased, that the trial court accepts that answer, this person will actually put their views aside. I agree with you. The decision says that, but that's still a finding of fact that the trial court has to make. And that finding of fact of bias or non-bias is entitled to the presumption of correctness, also under Wainwright. Okay, but can we try to clarify a point of law, assuming, just for the sake of argument, that the state court excluded a juror that was clearly qualified and that the juror should not have been excused for cause and that the conclusion that the trial court properly excluded the jury was contrary to Supreme Court law? Okay. Now, is that enough under Adams and the other cases cited by the petitioner here? Or do you maintain that even under these circumstances there has to be a showing that the resulting jury was actually biased? That's right. But the reason stated during the questions that were asked to my opponent, the case law is pretty clear. I mean, the cases they cited were pre-ADPA, but there's nothing... What would EDPA have to do with this? Because EDPA is a deference provision. That's right. So, assuming... I will concede that there is an issue whether after applying EDPA deference, one could conclude that the state court unreasonably applied the law. But let's say we conclude that the juror was improperly excused. The state court's determination to the contrary is unreasonable. So, the question is, why would EDPA change the law on whether you have to show that the resulting jury is biased or not? I don't understand that. I'm not too sure I do either, to be honest with you, Your Honor. So, do you have a case that said that EDPA did change that? No, Your Honor. That issue, to the best of my knowledge, has not been back before the Supreme Court since the Adams cases. Now, it's been before, as Judge Rivers said, it's been before the Sixth Circuit, and the Sixth Circuit has said otherwise on that. But... Has the Sixth Circuit said that it changes under EDPA, or has the Sixth Circuit sort of obliquely applied the bias test in situations that present this problem? My understanding is they simply just... They haven't disregarded it. Simply, they went ahead and applied the bias test. Okay. Do you contend that... that a defendant would have to show actual bias, assuming that they established... Yes, Your Honor. I mean, what the Constitution guarantees is a right to a trial by an impartial jury. And the defendant's not alleging that his jury was impartial here. Wasn't impartial. Wasn't, and he's not alleging that. Yes, he is. I don't know. I mean, it looks like he just got through answering the question I asked him. He says, if you follow the Supreme Court precedent of what they're saying, it's automatically biased. The jury is not going to be as pro-defendant as it is pro-prosecution. Automatically, when you exclude all these jurors who say, well, I have got problems. I'm unsettled about the wisdom of the death penalty, but yes, I can consider the death penalty. Automatically, you're going to have a jury that is more pro-government, pro-state, if you get rid of all these people, because what you're going to have left is all the people who say, yes, I'm very much for the death penalty, or yes, I'm for the death penalty. So automatically, don't you have a situation where you have a jury that is different and more biased in favor of the state? No, Your Honor, I disagree with that characterization. What you have left is a jury that will consider all legal sentencing options, and that's what the Constitution requires. In Juror 638 here, it was clear. Judge Groves said there was a great equivocation here. He made statements that he could, that he couldn't. He waffled. He went back and forth. What the Supreme Court said in Wainwright I think is particularly important here. It said the determination of bias cannot be reduced to a question-and-answer session which obtains results in a manner of a catechism. Everybody in this courtroom has tried cases. We've seen, went through the jury selection process where somebody just, you can't pin them down. They won't say, yes, I'm for it, or no, I'm against it. And that's what the judge is for. And that's why Wainwright says we have to leave that to the discretion of the trial judge, that it's a finding of fact that's entitled to the presumption of correctness. With all due respect to the court, what could possibly happen if you reverse, does he get a new trial, does he have to show bias? That's really not the issue here. The only issue before the court is, was juror 638 improperly excused? And he wasn't. So you're relying on the discretion factor there. Absolutely, Your Honor. And that is your basic argument. Well, part of my basic argument, but it's what the Supreme Court said in Wainwright. It's a finding of bias is a finding of fact. Can you ever really challenge that, then? I mean... Look, when you read the colloquy, if you look at the colloquy, I really think it's pretty overwhelming that this is just a very thoughtful person who is answering every single question directly, honestly, and who has reservations about the death penalty. I'm not sure, but who also says, Yes, I can consider the range of penalties. Your Honor, but he was also asked a question. I wrote down exactly what he said here. He was asked directly by the prosecution after this equivocation started. He was asked by the prosecution whether he was absolutely certain that he could realistically consider the death penalty or not, and his statement was, I think that would be the most accurate way I could answer your question, sir. But that's not the standard. Are you absolutely certain that you can realistically consider it? That's not... It doesn't require absolute certainty. Your card, Your Honor. But again, that's a finding of fact. You can't get rid of a juror just because they're not absolutely certain that in this case they can consider the death penalty. And they say, you know, I don't know. And it goes to the wisdom of having the death penalty. Your Honor, it goes to whether the trial judge believes that this person can realistically consider all sentencing options, and the trial judge here, exercising his discretion given to him by Wainwright, said... That's a question we have before us. Was it an exercise of discretion that's permitted by the Constitution? Whether Wainwright was, Your Honor, that's what we submit. Okay. Well, that's your argument. Well, talk about discretion. I mean, the trial judge's findings of fact are presumptively correct, and the person challenging those findings of fact has to present evidence which is clear and convincing to the contrary. That's the standard, right? Yes, Your Honor. So it's not whether the trial judge abused discretion. It's even higher standard. It's a higher standard than that, whether it's clear and convincing that the judge abused her discretion in making the finding of fact. Yes, Your Honor. Which is a high standard, right? Incredibly high standard. Okay. So the judge made a finding, right? Made a finding of fact. And, Your Honor, let me say something to that. Because you talk about how reflective, how thoughtful this juror was in his responses. The trial judge in this case was now Kentucky Supreme Court Justice Lisa Beth Abramson. And Judge Abramson thought about this overnight. She made an initial finding, we're going to allow him on, but I'm going to think about this. So she went home that night and thought about it. This wasn't a knee-jerk reaction. She also reviewed the video, right? Yes, Your Honor. Now, I assume she reviewed the video because there's not a transcript at that point. You're correct. Yes, Your Honor. So that's the only way to review the testimony is to see the videotape. Yes, Your Honor. This is an aside. The petitioner in their brief says because there's a videotape, there is no EDVA deference because we can review the videotape as easily as the trial judge could or the Kentucky Supreme Court could, and therefore the videotape eliminates any deference that we should give to the state court judgment. How do you respond to that? I would love to see the authority for that. There isn't any. There isn't any, is there? None, Your Honor. Okay. And answer to also the question she raised. It does have some reason behind it, though, doesn't it? Just no authority for it. If you're looking at the same thing, you assume that there's no difference in what the trial court's got and what you've got, right? Your Honor. Isn't that right? Your Honor, it's not the position for the court to second-guess, though. Quite honestly... Federalism concerns, too? Absolutely, Your Honor. We have to deter... I mean, we're reviewing a state court judgment as a federal court, and whether we could do the same job as a state appellate court, we have to consider the federal relationship here, and that's what EDVA does in the habeas context. The federal court's role is... But my only point is you've got the same thing you're looking at. This court's looking at the same thing the trial court's looking at. Your Honor, it goes back to Woodall, though. Woodall says that, and what Judge Griffin said, it's based on what the Kentucky Supreme Court did with this case, not what the trial judge did with the case. Did they reasonably apply Wainwright in this instance? That's the issue. They unreasonably applied. All right, read that. The positioner has to establish unreasonable... That's right. Poor choice of language on my part. Which is a tougher standard to say, well, it's within the room. Okay, whatever. One thing I do want to bring up that Judge Griffin raised, did the Kentucky Supreme Court address this in a federal manner, and they did. The briefs that were filed by the parties are part of the record. The court can see that, that federal cases were cited by the appellant, by Wheeler in this instance. Now, did the Kentucky Supreme Court cite those? No, they cited some state cases, but quite honestly a lot of those state cases cite federal law. Well, Mr. Flood said those state cases they cited have a different standard than the federal standards. Is that correct? Your Honor. I don't know. Your Honor, I can't state this with absolute certainty, so please don't hold my feet to the fire, but my memory of Maeve is that Maeve cites Wainwright. I could be wrong, but that's what my memory tells me. Okay. Judge White and I on the Michigan Court of Appeals used to cite state court cases all the time that were based on federal law, but that didn't mean we didn't know what the federal law was, because we cited the state court precedent. Correct, Your Honor. Are you saying that's what the Kentucky Supreme Court is doing here? Yes, Your Honor. I'll quote from their opinion the relevant sentence. There was no error in the rights of the defendant to a fair trial and impartial jury due process, and freedom from cruel and unusual punishment under both the federal and state constitutions were not violated. That was the last sentence of their holding on this jury selection issue. Now, did they specifically cite Wainwright or Witherspoon? No, they did not, but they were certainly aware of the federal issues involved. Let me ask you, do you think that the juror here, 638, stated that he could set aside whatever doubts he had, which he expressed in the colloquy between the counsel and himself, that he could set that aside and consider the full range of penalties? Do you think that's what he said as a juror, and do you think he was lying or something? Again, he equivocated. You say that, it's cherry-picking. That's just picking parts and phrases of what he said to say, well, he wasn't biased. Well, didn't they ask him the question whether he could do that? Yes, Your Honor. He said that he, yes, I can. Yes, Your Honor. And that's equivocal? It was equivocal when they asked him further questions, because he was equivocal before, and if my memory is correct, the trial court's the one asking if he could fairly consider all options, including the death penalty in this case. But there was further questioning here. This man was all over this. It was the last question asked, wasn't it? I honestly don't remember, Your Honor. I think so. The last question asked was can you set it aside and consider all the options, and he said yes. Well, Your Honor, there's also a case law saying that a person cannot be rehabilitated by magic question also, and that's basically what that was. You know, you just can't look at that in a vacuum and just take this one statement and say, well, he wasn't biased when everything was like that. What are you basing it on that the trial judge should have disbelieved you? I don't know, Your Honor. I mean, that's the trial judge's decision. I mean, like I said, you were a trial judge. Every judge I'm hearing about, I understand, was a trial judge, and there are jurors that something just didn't seem right. The questioning, they said something. That's all the trial judge has to say. Well, and then misinterpreted what he said? Well, I think that's a mischaracterization. I don't think Judge Abramson misinterpreted what the gentleman said. He said a lot of different things that were all over the place. I mean, if we want to just focus on one statement. He just said I have doubts. I'm unsettled as to whether I agree with the death penalty or I don't. I don't know. In this case, I've tried to do a philosophical problem. I'm a father of a lot of children, and we've discussed it. I don't know what I think about that. That's what he said. There's nothing equivocal about that. Your Honor, the thing is the state's entitled to a jury that will consider the full sentencing range. And if there's any doubt, the person should go. But the defendant is entitled to have people on the jury that take the death penalty seriously. Just because somebody will be thinking very, very carefully before imposing it, doesn't mean they don't belong on the jury. Again, Your Honor, not to beat a dead horse, but again that's a factual question that the trial judge resolved. And with all respect to the court, that's not a question for the court to decide. There's the deference standard there. There's the presumption of correctness there. The trial judge found, and there's been no clear and convincing evidence to show that this gentleman received a biased jury in any way. Okay. I don't understand you to be pushing that issue, the requirement of bias. Do you want to say anything about the other issues?  Thank you. Regarding, I'll address the pregnancy fairly quickly. As the court noted in their question earlier, there were two references to pregnancy that were very brief. Dr. Burroughs, the medical examiner, was reading the jury, the results of the autopsy and noted that Ms. Warfield was pregnant. Quote on examination of the uterus, I found a small embryo in a little sac with a placenta. So the child is less than two months gestational age. It's classified as an embryo. During closing argument, prosecutor said, what about Nairobi? They didn't find drugs, and this is actually something about Nigel. What about Nairobi? They didn't find drugs in her system. Nobody ever said she was a drug dealer. What about her? What about her life? Autopsy told you inaudible. She didn't have any alcohol in there. There's no drugs. She was pregnant. I mean, she's a normal person. She just loved a guy named Nigel. He loved her. They lived together in the West End, and they died because of that. We're supposed to believe that's okay. It wasn't like the prosecutor's jumping up and down, yelling she's pregnant, she's pregnant, killing for it. There's lots of precedent saying that it's fair to humanize the victim, tell the jury who this person was. Well, Your Honor, I submit it to you this way. Would it have been, if you're worried about any sort of undue passion on the part of the jury while she was pregnant, he killed a pregnant woman, would that have been any different had it happened ten months later, the baby's a month old? The jury certainly would have been able to hear that she was the mother of a newborn. That's humanizing evidence. What's the real difference here? But most importantly, Well, the difference is, to some people, it would be as if she killed the newborn. I understand that, Your Honor. And the person, you're much more likely to give the death penalty to someone that kills a little baby. Or leaves a one-month-old as an orphan. Or leaves a one-month-old an orphan. I understand your point, Your Honor, but I don't think that's just a magic thing where somebody's going to go, because the baby was two months gestational as opposed to two months post-birth, their opinion's going to be that much different of him. But again, the most important thing is, particularly, again, under Woodall, there's no precedent from the United States Supreme Court saying that admission of testimony or argument that the victim was pregnant violates due process. There's nothing there. There's no precedent saying that. Now, the only way that we are getting a relief on this is if the court, the other way the court goes, the certiorari's granted, and the Supreme Court says, well, this is a new rule, it applies to this case, and it applies prospectively. That's not the issue. The issue is that the Kentucky Supreme Court ruled contrary to or an unreasonable application of controlling U.S. Supreme Court precedent, and there is none on this issue. As the magistrate judge in the district court noted, there's not even any federal law on this issue. It's an abyss. Other than just the general proposition that you can introduce humanizing of, in a sense, that's really all this was. Whether this baby was two months gestational or two months old after birth, again, like I said, I understand your concern, Your Honor, but either way, it's still, either one's going to elicit some sympathy, but it's not improper. It's who she was, and they were entitled to hear that. What's the difference between this case, and I think it was the Fifth Circuit case, that found error in another pregnancy-related... Well, Your Honor, what, again, back to Woodall, what Woodall says is if there's no Supreme Court controlling precedent on it, what a circuit... How do you distinguish this case from the other case that they rely on? Honestly, I haven't read the case, so I can't answer that question, but again, that's not part of the standard of reviews. Woodall has quashed that. The only question for this Court is, is there a controlling U.S. Supreme Court precedent, not how the Fifth Circuit has ruled upon this. I'll answer, Your Honor, regarding the jury instruction issue with Mills v. Maryland issue. Mills v. Maryland and McCoy v. North Carolina were very simple in what they said, and what they said was a jury cannot be told that their decision regarding the finding of mitigating circumstances must be unanimous. Now, what Wheeler is asking the Court to do is to expand the rationale of that, and again, back to Woodall, Woodall says, the Court cannot expand the rationale of these cases. It's either contrary to, there's either controlling Supreme Court precedent, or there's not. Mills and McCoy are not controlling. That didn't happen here. This jury was not told you have to find mitigation beyond a reasonable doubt. They were given instructions on mitigation that did not mention, I'm sorry, the unanimity, I'm sorry, there was nothing in the instructions regarding, I'm getting tongue-tied now, unanimity of mitigation. Nonetheless, though, this Court has addressed that issue before. Whether or not this, in a Kentucky case, in Cordenbrock v. Scroggie. Now, I apologize to the Court, because I misstated something in there. It wasn't malicious. I said that Judge Kennedy wrote the majority opinion of the Court. It was an en banc decision. Actually, Judge Merritt wrote what was titled the majority opinion of the Court, but there were a lot of different issues, and on the Mills issue, actually, Judge Merritt was in the minority, and it was 9-4. A lot of water over the dam since then. Excuse me, Your Honor? That was 25 years ago. A lot of water over the dam since then. Absolutely, Your Honor. That was before I was even licensed to practice, and I'm getting up there now. But the Cordenbrock case dealt with the same type of jury instructions we had here. Cordenbrock offered the same argument that's being raised here, that the jury had to be told. Well, it's a little different, because that instruction at least said it used unanimity in the direct context of aggravating factors. Yes, Your Honor. But it also dealt, too, with the requirement for unanimity on mitigation, and the Court said that that's not required. The jury does not have to be instructed regarding unanimity or lack thereof for mitigation, and the Court followed up with that eight years later in Cole v. Bell, again saying that similar instructions of what we have here pass constitutional muster, that the jury need not be informed that their decision on mitigation need not be unanimous. So there's a very controlling precedent from this Court that absolutely shoots down that argument. Thank you. If the Court has no other questions, I don't think we have any further questions. Thank you. Thank you, Mr. Barr. Mr. Flood, before you begin, the closest case on the jury exclusion issue that I can find is Jackson v. Houck. Are you familiar with that decision on the Sixth Circuit? I'm not. All right. If you're not familiar with it, I guess we can't talk about it. It's a 687 F3rd 723 2012 case. But anyway, it involves really the same situation where a juror is excluded because in the view of the State Court, the State Court judge ruled that the juror was substantially impaired, and we denied the habeas and really deferred to the deference on the case. And a lot of the statements there are pretty similar to the statements here about, yes, I think I could invoke the death penalty. I might be able to. Anyway. If you're not familiar with the case, which I'm kind of surprised you're not. Well, I don't think it was cited by the warden in their response. Okay. It's easily found. I will take a look at the case, and if we could submit supplemental evidence. No, I don't need it. If you could respond today, fine. Well, what Adams v. Texas says, and I quote here, the state may not constitutionally execute a death sentence imposed by a jury called of all those who revealed during voir dire examinations they had conscientious scruples against the death penalty. The defendant, on the other hand, is seriously prejudiced by that practice. What they're saying is when you exclude a single juror in Adams, that that is the harm. But wait, a single juror? All jurors. No, it says the jury is called of all jurors who have reservations. So all jurors who are removed in Juror 638, even in the case best to the state, I don't think he did have serious reservations. I think this juror was sort of straight down the middle. He was just a thoughtful, serious person. But to the extent he had any reservations, when you remove that juror, you've now removed called all of the jurors, and that's why harmless error analysis doesn't apply. The truth is— I don't understand it. You've removed one juror. This is not an exclusion that's with the system, systematic exclusion of the practice or procedure or something. It's just one particular person based upon these unique facts. Isn't that different from some of those cases? I think it's different than Lockhart, but it touches on the same issue, and the issue is a juror where all the people with conscientious scruples, including Juror 638 arguably, is removed from the jury is not a fair jury for someone facing the death penalty, and that that is uniquely— I mean, if there were two or three other ones in this jury pool that you could cite, and we could say, well, the judge is doing this to everybody, but you don't. You have the one person. Well, I think that's why the reversals are always a single juror and why it's not harmless error because how would you prove prejudice? And the truth is if you adopt that analysis, this kind of claim could never get federal relief if it arose in state court because does it become systematic when the judge removed two or three or six or 15? At what point? And the Supreme Court has said we're not going to go into that. The removal of a single juror causes a unique harm to the defendant facing the death penalty, and that's why there's no harmless error analysis. During the warden's response to some of the questions, the issue about trial court discretion came up, and I don't see that upon a finding that someone is substantially impaired or not substantially impaired that a trial judge has any discretion, and that's different than the state standard. Once a judge determines that a juror is substantially impaired, they're required by law to remove that juror. Likewise, if the judge determines that they are not substantially impaired, WIT prevents them from excluding the juror. The law in Kentucky, however, is different. The law in Kentucky under MABE, and I'll cut to the chase on this because I have MABE right here, it doesn't cite WIT. It doesn't cite any federal precedent. It cites only state court cases that construe the Kentucky standard, and here's the Kentucky standard. Judges are afforded broad discretion in granting or denying excusals. There's no such discretion. Likewise, the standard is not substantially impaired or prevent. It's that the person has a mental attitude such that they stand impartial. That's the Kentucky standard, and that's the standard they cite. They don't rely upon any federal precedent or any state court precedent construing, quoting, or referencing the federal standard, and the Kentucky Supreme Court has relied on the federal standard in other cases decided the same year, but the two cases that they rely on here, MABE and Montgomery, do not. They rely upon a uniquely state standard. Does it matter that their conclusion is that it didn't violate the state or federal constitution? I think we would have a much harder argument to make for de novo review if they said what Your Honor said, but they didn't. Well, counsel just read it. That's not what the Kentucky Supreme Court said. Oh, maybe I misheard. In this case, they don't cite the federal standard or reference the proper standard. But didn't they say we find no violation of certain amendments under the state or federal constitution? Not in the discussion of this juror. There was a separate claim that we have not raised in this appeal that he's referring to, but it's not on this issue. And I think the deference is really important because they have the catch-all. I mean, I think what he read is accurate. They have a catch-all conclusion that we find that there is no federal due process rights. I mean, they do have that statement in there, don't you? I mean, you're saying it's another part of the opinion. It's another part of the opinion. But it's there, and it appears to be all-encompassing to me. I mean, it's a conclusion, sure. I respectfully disagree, but to the extent that's true, it's still an unreasonable application of clearly established federal precedent because this judge simply doesn't know. But at least it's a ruling on the federal question. Okay, all right. Could I have one moment to address the videotape? Because I think there are a couple misstatements that are really, really important. To the extent that a judge has discretion or a deference applies to a trial court, it's because the trial judge is in a better position to review demeanor. No, because it's a state system, and the state system and the federal system, we have different interests going on here. I mean, it's not because we're appellate judges and that Kentucky state judge is a state judge. It's because we come from different systems. Well, I think the case is – Different sovereigns. Gray, Witt, Adams all say that when the issue turns on demeanor, you accord such a thing. No, it doesn't, though. Congress has given deference to the state court determinations for reasons of federalism, and it doesn't rise and fall based upon how concrete the evidence is, whether it's videotaped or whether it's transcripted or not. It's because it comes from the state, and the federal people reviewing the state system have to give deference. That's true. That's what it's about. And it's not about our ability to review it as well as a Kentucky appellate judge could do. We've got to give more deference than maybe they have to give. Well, for the reasons we stated, we believe this was an unreasonable determination of facts because she simply got it wrong. On a reasonable application. On a reasonable application. Utterly established. Federal law is established by the holdings of the state court. Yes, thank you, Your Honor. All right, any further questions? Judge Merritt? Judge White? All right, thank you, counsel. The case will be submitted.